*Nov. Term,*
*1847.*

*Raub*
*v.*
*Heath.*

*Tuesday,*
*February 8,*
*1848.*

---

*Tuesday,*
*February 8,*
*1848.*

---

| 8b | 575 |
| 130 | 392 |

*Tuesday,*
*February 8,*
*1848.*

---

| 8b | 575 |
| 130 | 312 |

**Raub and Others v. Heath.**

Trespass *quare clausum fregit*. The land on which, &c., had been purchased by the plaintiff at sheriff's sale, and was vacant at the time of the sale and when the sheriff's deed was executed. *Held*, that it was not essential to the

Nov. Term,
1847.

RAUB
v.
HEATH.

plaintiff's recovery that he should have taken actual possession of the land before the commencement of the suit.

The statute which gave to an execution-defendant the privilege, for a certain time, of redeeming his land sold on execution, did not give him the right of possession of the land during that time.

The legal title and right of possession were in the purchaser, subject to the defendant's right to redeem.

The statute of 1838 authorized the issuing of a *fieri facias*, in the first instance, directed to the sheriff of any county in the state; and the defendant's real property in the county into which the execution was so sent, he having no personal property there, was subject to such execution.

Thursday,
February 24,
1848.

ERROR to the *Tippecanoe* Circuit Court.

PERKINS, J.—Trespass *quare clausum fregit*. Trial by the Court and judgment for the plaintiff.

It will be a sufficient statement of the pleadings in the cause to say that upon the plea of not guilty, and upon the replication to a plea of title to the premises in question in one of the defendants and entry by the others under him, there were issues.

The facts of the case will be stated in connection with the points considered.

The plaintiff below claimed title by virtue of a sheriff's sale and deed. At the time the sale and deed were made, the land was vacant, and the plaintiff had not, before the commencement of his suit, taken actual possession. For this reason, it is contended that he could not maintain this action. *Wood* v. *Mansell et al.* 3 Blackf. 125, decides this point. It is there held that the deed gives to the bargainee constructive possession of the land purchased, and that such possession is sufficient to support trespass. See, also, *Conner* v. *N. Albany*, 1 Blackf. 88, and notes.

At the time of the sheriff's sale above mentioned, the statute conferred upon execution-defendants the right of redeeming lands sold at such sales, at any time within one year thereafter; and it is insisted that said statute conferred also upon such defendants, by implication, the right of possession of lands so sold during said year. It seems to us that the sheriff's sale and deed, if valid, vested in the purchaser, under that statute, the legal title and right of possession defeasible by a redemption pursuant to the statute. Some cases, supposed to be in opposition to this construction, have been cited

Nov. Term, 1847.

RAUB
v.
HEATH.

from the *New York* Reports, but they are not in point, as by the redemption law of that state under which the cases arose, the sheriff was prohibited making a deed to the purchaser at sheriff's sale till the time allowed for redemption had expired, and the law did not provide for the purchaser's taking possession. 20 Johns. 3. 2 Wend. 507. The sheriff's deed, if legal, conveys title, and title gives right of possession. As, therefore, under the *New York* statute, the sheriff could make no deed till the time for redemption had elapsed, and the statute gave no right of possession, no such right existed during the redemption period. But under our redemption law, the sheriff executed his deed to the purchaser immediately upon the sale, and that vested in him the title and right of possession.

The next and last objection to the judgment of the Court below is, that the sheriff's sale and deed were void and consequently conveyed no title to the purchaser, the plaintiff in that Court. This objection raises the important questions in the cause, of which there are two. The first relates to the manner of executing the writ of *fi. fa.* by the officer, upon which the sale was made; and the second relates to the issue of that writ from the clerk's office.

The defendant in error, being the plaintiff below, was the plaintiff in the execution on which the sheriff made the sale through which title is claimed in this suit, and is therefore, according to *Harrison* v. *Doe*, 2 Blackf. 1, chargeable with notice of all irregularities in such sale. The alleged irregularity on the part of the sheriff in the sale in question, is the selling of real estate before he had subjected to sale the defendants' personal property. The sheriff being presumed, in the absence of proof, to have done his duty in this particular, it devolved upon the defendants below, if a failure to discharge it happened, to show it. Did they show such failure? It appears of record that the *fi. fa.* on which the sale was made, was issued by the clerk of the *Montgomery* Circuit Court to the sheriff of *Tippecanoe* county, upon a judgment rendered by the Circuit Court of *Montgomery* county; that that was the only execution ever issued on the judgment; that the execution-defendants had personal property subject to execution in *Montgomery* county; and that, under these

Nov. Term,
1847.

RAUB
v.
HEATH.

circumstances, the sheriff of *Tippecanoe* county sold the real estate in question on said *fi. fa.* It is not shown that said defendants had personal property in *Tippecanoe* county, but, on the contrary, it is admitted in argument, by their counsel, that they had not. As the sheriff of *Tippecanoe* county, in executing said *fi. fa.*, could not look for personal property beyond the limits of his own county, and as it is admitted none such existed within those limits, the alleged irregularity in executing the *fi. fa.*, so far as the sheriff was concerned, did not exist.

We proceed to the second question arising upon the objection under consideration, viz., the question whether the execution was wrongfully issued to *Tippecanoe* county. Could, then, the writ of *fi. fa.* in question issue to *Tippecanoe* county, where the defendants had no personal property, to be executed there upon real estate, while the defendants had personal property subject to execution in the county of *Montgomery* where the judgment was rendered? The R. S. of 1838, which govern this case, contain two provisions bearing upon it. In sect. 2, p. 277, it is enacted: "And in all cases the real estate of execution-defendants shall be exempt from levy and sale until the personal estate of such defendants shall be first levied upon and sold, unless such defendants voluntarily authorize the sale," &c., "of their real estate." In sect. 11, p. 279, it is enacted: "That clerks of the Circuit Courts may, upon request, issue executions directed to the proper officer of any county within this state, whose duty it shall be to obey and execute the same, and make due return thereof to the office from whence the same issued, according to the provisions of this act."

This latter provision clearly authorized the execution-plaintiff to issue execution to such county in the state as he chose, in the first instance, unless its operation in this respect was limited by the provision above quoted from the second section. We do not think it was. We think the plaintiff might take his execution in the first instance to any county in the state, but that the mode of executing it by the officer to whom it was directed would be governed by the provision in the second section. It would be his duty to first sell the personal property in his county. To give the enactment in the second

section a construction as broad as its language would autho-
rize, would produce great inconvenience so far as there are
cases yet to be governed by the laws of 1838. For example:
Suppose a judgment obtained, as in this case, in *Montgomery*
county; suppose the defendants have no personal, but have
real, property in that county, and the execution-plaintiff,
knowing of no personal property elsewhere, issues execution
to the sheriff of the county in which the judgment is obtained,
upon which real estate is levied on and sold, the said plaintiff
being the purchaser, and consequently chargeable with notice
of all irregularities; suppose, afterwards, it is discovered that
the defendants had, at the time of such levy and sale, per-
sonal property in the state of *Illinois;* would their possession
of such property vitiate the sale? None would contend for
such a proposition. But suppose instead of in the state of
*Illinois,* the personal property should be discovered in a re-
mote county in this state, would the possession of such pro-
perty vitiate the sale? It seems to us it should not. Still the
above would both be cases in which the real would be sold
before the personal property of the defendants, and would be
within the letter of the provision of the statute under consi-
deration. This provision, then, must be restrained in its ope-
ration by construction; and the question is, to what extent?
It seems to us that the safest and most reasonable rule upon
the subject, viewing the two enactments in connection, is
that the execution-plaintiff may, in the first instance, take
his execution to any county in the state, but that the officer
to whom it may be directed, should first sell the personal pro-
perty of the defendants subject to execution in his county,
unless otherwise directed by the defendants according to the
statute. The execution in this case was legally issued (1).

*Per Curiam.*—The judgment is affirmed with costs.

*G. S. Orth* and *R. C. Gregory*, for the plaintiffs.

*Z. Baird*, for the defendant.

(1) See the statute of 1846 relative to the issuing of executions. Acts of
1846, p. 37.